# Matkin *et al.* v. Marengo County *et al.*

*Bill in Equity to enjoin Removal of Court House.*

1.  *Court of county commissioners; authority for building new court house.*—A court of county commissioners has sole and exclusive power and authority in the matter of determining the necessity for a new court house for a county and having the same located within the corporate limits of the town established as the county site; and in the exercise of their discretion in such matters, their acts, when free from fraud, corruption or unfair dealing, can not be questioned or controlled by any judicial tribunal.

2.  *Removal of court house; construction of Sec. 41 of the Constitution of 1901.*—Section 41 of the Constitution of 1901, which provides "that no court house or county site shall be removed except by a majority vote of the qualified electors of said county voting at an election held for such purpose," prohibits the removal of a court house of a county from the town or city where it is located at the time of the adoption of the Constitution, except in the manner provided in said section; but said section does not prohibit the court of county commissioners from erecting a new court house within the town or city constituting the county site, on a lot other than that upon which the old court house is located, without having first submitted the question to the vote of the people of said county.

3.  *Same; court of county commissioners; validity of order made at an adjourned term.*—At a regular May term of the court of county commissioners of Marengo county the matter of building a new court house for said county was continued until the June term of the court. At the June term of the court said

[Matkin et al. v. Marengo County et al.]

matter was continued until the adjourned term of the court in July. *Held*: That the order of the court made at the adjourned term of the court in July, providing for the building of a new court house was made at a time and term when the court of county commissioners had the right to exercise the power vested in it by the statute regarding the building of a new court house, and said order was valid.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. H. SMITH.

The appellants, Thos. D. Matkin and Preston B. Glass, resident tax payers of Marengo county, filed a bill against Marengo county, Samuel P. Prowell, individually and as judge of probate of said county, and against the court of county commissioners, and the members thereof individually, and F. M. Dodson, and W. T. Hand, in which is was averred that the court of county commissioners of Marengo county, had, for the purpose of erecting a new court house thereon, secured a lot outside of the corporate limits of Linden, as such limits existed at the time of the establishment of the county site of Marengo county in said town, and had made a contract with Dodson & Hand to erect such new court house. The purpose of the bill was to enjoin the removal of the court house of Marengo county from its then present location to the lot so purchased for that purpose and to have delivered up and cancelled the contract made by the county commissioners for the erection of said court house on said new location, and to have delivered up and cancelled the county warrants alleged to have been issued by the court of county commissioners for the purpose of erecting said new court house.

On the filing of the bill a preliminary injunction was issued. The defendants answered the bill and demurred thereto, and also moved the court to dissolve the temporary injunction upon the denials of the answer and for the want of equity in the bill.

On the submission of the cause upon the demurrers and the motion to dissolve the injunction, the chancellor rendered a decree overruling the demurrers and overruling the motion to dissolve the injunction. From this

the respondents appeal and assign the rendition thereof
as error.·

··In the· Supreme Court the ·decree of· the chancellor
was affirmed.——*Marengo County v. Matkin*, 134 Ala.; 275.
After the affirmance of the decree the complainants filed
a supplemental bill in which they made special reference
to the original bill and averred that the court of county
commissioners of Marengo county had rescinded its for-
mer action in the selection· of ·the lot described in ·the
original bill for the· erection of the ·court house thereon,
and had subsequently, by a resolution of said court of
county commissioners, procured another lot situated
within the limits of the town of Linden as it existed at
the time of·its establishment as the county site of Ma-
rengo· county, and· had entered into another contract
with Dodson & Hand for the erection of·the new court
house on said lot, and a new court house building was
being erected upon the lot so·selected. · The orders ·and
the proceedings of·the ·court of county commissioners in
selecting ·said lot and in making said ·contract are set
forth in the supplemental bill, and it is shown by said
orders that they ·were adopted ·by· the commissioners
court at a meeting of said court ·held on July 9th, 1902.
It was averred in said ·supplemental bill that while the
lot which was selected by the court of county commis-
sioners as the lot on which to erect a new court house
was within the corporate limits of the town of Linden
as they existed when Linden was established as the
county site of ·Marengo county, it was a separate and
distinct lot from the one upon which the court house
was located at the. time of ·the filing of the bill.   That
the warrants which were authorized by the court of
county commissioners at their meeting on July 9, 1902,
to be issued for the payment of the contractors were not
issued or authorized as required by law; that the meet-
ing of the court of county commissioners held on July
19, was a meeting adjourned from the May term of said
court; that at the May term of said court the matter of
purchasing another lot and erecting a new court house
was adjourned until the June term of the court, and at
the June term of the court it was continued until the
July term of the court, at which time action was taken

thereon. It was further averred in the supplemental bill
that no election had been held for the removal of the
court house from the then present location to the new lot
upon which the new court house was to be built, as pro-
vided by section 41 of the Constitution, 1901, which pro-
vided that no court house or county site should be re-
moved except by a majority vote of the qualified electors
of said county voting at an election held for such pur-
pose; and that under said section of the Constitution the
court of county commissioners have no right to remove
the court house from the present site to the lot where it
was proposed to build a new court house. It was fur-
ther averred that since the filing of the original bill no
special taxes have been levied as provided by section 215
of the Constitution of 1901, and no debt has been author-
ized as provided by section 222 of said Constitution and
no general law has been passed as provided for in said
section. It was then averred in the supplemental bill
that except as therein alleged "the facts upon which the
complainants base their rights to relief remain substan-
tially as they were when the original bill was filed."

The prayer of the supplemental bill was that the re-
moval of the court house of Marengo county from its
present site be enjoined; that the building of the new
court house upon the lot purchased by the court of
county commissioners for that purpose be enjoined;
that said contract for the building of a new court house
be delivered up and cancelled, and that the further ne-
gotiation or their use of warrants authorized to be issued
by the order of the court of county commissioners be en-
joined, and there was a prayer for general relief.

The respondents filed a sworn answer, in which they
averred that after the affirmance of the decree of the
chancellor by the Supreme Court in the original case,
they abandoned the purpose of erecting the court house
on the lot first selected and proposed another lot with-
in the corporate limits of the town of Linden as they ex-
isted at the time of the establishment of the county site
of Marengo county at Linden; and it was upon this lot
within said corporate limits of Linden that they pro-
posed to build the new court house; that acting within

the power and authority conferred upon them by law, after determining that the old court house was not suffi-·cient for the needs of the county, they had entered into another contract for the erection of a new court house; that this action was taken at a meeting of the court of county commissioners on July 9, 1902, after a regular adjournment of said court from the May term, 1902, of said court; that said contract had been entered into and a large part of the work had been done and a large amount of money had been paid upon said contract. It was then averred in the answer that no election had been held by the qualified voters of Marengo county for the building of a new court house, or as to the removal of the said court house upon the lot upon which the new court house was being built, and that no such election as required under the new Constitution had been held, and that said court of county commissioners has the right to build the new court house on the lot which they had acquired for that purpose without holding an election. In said answer the respondents denied the averments contained in the supplemental bill as to the status of the funds in the county treasury. The respondents demurred to the supplemental bill, and to each separate portion, and the prayer thereof upon the following grounds:

"First. That it appears from the same that the site of the said new court house to be built for Marengo county is located within the county seat of Marengo county. Second. That it appears from the same that the said new court house is not to be removed outside of or from the county seat of Marengo county, Alabama. Third. That it appears that said court house is not to be removed from the county seat of said county. Fourth. That the facts stated in said bill do not give the honorable court jurisdiction of the subject matter of this suit. Fifth. That the alleged action of the court of county commissioners of Marengo county was a valid exercise of the authority vested by law in said court. Sixth. That it does not appear that said court of county commissioners for Marengo county, Alabama, in the matter complained of, exercised the authority vested by law in said court. Seventh. That it is not shown in or by said

supplemental bill that said commissioners court has is-
sued any warrants in violation of law or in excess of its
authority. Eighth. That it does not appear that said
court has or intends to exceed its authority in the issue
of warrants."

The respondents also made a motion to dissolve the
preliminary injunction upon the ground that the supple-
mental bill was without equity, and upon the following
additional grounds: "First. The allegations in said
supplemental bill of complaint did not authorize the
granting and issuance of said injunction. Second. The
answer of these respondents, which is sworn to, deny
the material allegations of said bill. Third. It appears
from said supplemental bill and sworn answer that said
injunction should be dissolved. Fourth. The allegations
of said bill, upon which said injunction was granted, are
denied in and by said sworn answer. Fifth. It appears
from the denials of said sworn answer that the allega-
tions of said supplemental bill upon which injunction
issued are not true."

On the submission of the cause upon the demurrers,
and upon the motion to dissolve the injunction, the
chancellor rendered a decree dissolving the injunction
and sustaining the demurrers. From this decree the
complainants appeal and assign the rendition thereof
as error.

GUNTER & GUNTER, WILLIAM H. TAYLOE and WIL-
LIAM CUNNINGHAME, for appellants.—It is respectfully
submitted that the action of the commissioners court in
purchasing a new site for a court house and contracting
for the erection of a new court house thereon is void, be-
cause, the commissioners court is a court of limited
jurisdiction, whether exercising judicial or quasi legis-
lative powers.—3 Brickell's Digest, 183, §§ 95, 96, 97;
2 Mayfield's Digest, 941, §§ 114, 122.

No court house or county site can be removed, etc.
Constitution, § 41; 8 Am. & Eng. Encyc. 20 (new ed);
7 *Ib.* 10, 12; *Moffatt v. State,* 40 Ind. 217; *Jackson v.
State,* 102 Ala. 76; *In re Allison,* 16 Am. St. Rep. 224

and notes; *Marengo County et al. v. Matkin*, 134 Ala. 275.

The regular terms of the commissioners court are prescribed by law.—Code, §§ 955, 3977. Special terms can only be held as prescribed by §§ 956 and 3977 of the Code. Adjourned terms are simply continuations of the regular terms, and cannot be had after next regular term. In other words, the May term, if lawfully held, could not be adjourned *beyond the regular June term*. 7 Ala. 85; *Hays v. Ahlrichs,* 115 Ala. 239. The acts of the court held at a *time* and place not authorized by law are *absolutely void*.—20 Ala. 446; 42 Ala. 404; 12 A. & E. Ency. Law, 296; *Lewis v. Allred,* 57 Ala. 630; 67 Ala. 163; *Boynton v. Nelson,* 46 Ala. 501; 84 Ala. 66; 102 Ala. 215; 63 Ala. 383. And a void judgment may be collaterally attacked. This is said to be "horn book law," in 12 Amer. & Eng. Ency. Law 147-50, notes 2, 3; *Lewis v. Allred,* 57 Ala. 628; 56 Ala. 279.

The commissioners court is a court of record.—Code of 1896, § 951.

MALLORY & MALLORY, CANTERBURY & GILDER, W. W. LAVENDER and J. M. MILLER, *contra*.—The court of county commissioners of Marengo county had authority without the vote of the people to locate the new court house within the original county site. Court of county commissioners has sole and full authority in the matter of determining the necessity for a new court house for a county, and in having the same erected and in providing the means for the same, and that in these matters they act in, at least, a *quasi* legislative capacity, and their acts, within the bounds of their legal authority and conforming to the requirements of the statute, cannot be questioned, reviewed or annulled by any court. Code, 1896, § 1409; *Hays v. Ahlrich,* 115 Ala. 248; *Commissioners v. Herne,* 59 Ala. 37; *Hill v. Bridges,* 6 Por. 197; *Moore v. Hancock,* 11 Ala. 245; *Parnell v. Commissioners,* 34 Ala. 278; *Commissioners v. Bowie,* 34 Ala. 461; *Askew v. Hale,* 54 Ala. 638.

It appears from the bill and answer that the action of the court of county commissioners of Marengo county

was had at a regular term of said court, and at an adjourned term thereof, and no question can be raised as to the regularity of the court.—*Lewis v. Intendent, etc.,* 7 Ala. 85; *Hays et al. v. Ahlrichs,* 115 Ala. 249.

The county seat is not the lot on which county buildings are located, but it is the town in which such buildings are located. It is not the buildings themselves, but the town or municipality in which the buildings are located. It is the seat of government of the county, the town or municipality in which the county or other courts are held, and where the county officers have their offices, and where the county business is transacted.—7 Amer. & Eng. Ency. Law (2d ed.), 1012-13 and 1017, and citations; *Whallon v. Circuit Judge,* 51 Mich. 503; *Moffatt v. State,* 40 Ind. 217; *In re County Seat,* 4 Pa. Dist. Rep. 310-19; *Doolittle v. County Court,* 28 W. Va. 158.

DOWDELL, J.—The present appeal is prosecuted from the decree of the chancellor dissolving the temporary injunction theretofore granted in the case, and the rendition of this decree constitutes the only assignment of error on the record. The two principal questions, and indeed the vital questions, involved in the controversy, and urged in argument by counsel, are, first, whether the court of county commissioners have the power to remove or change the court house from one lot to another and different lot within the limits of the territorial area designated by law and constituting the county seat, without first having submitted the question to the vote of the people under section 41 of the Constitution. Second, whether the orders of the court which were made in the case in reference to the removal of the court house, were made at a time and term when it had a right to exercise the power, supposing the power to be in the court.

By an act of the general assembly approved February 8, 1871, it was provided, among other things, "that the court house of Marengo county be, and the same is hereby, removed from Demopolis to Linden, in said county, and that the same be permanently located at Linden, in said county;" and it was also provided in said act for the removal of the records and furniture belonging to the

county offices within a specified time. By this act the town of Linden became the court house *site*, or the county seat of government for the county of Marengo. No particular lot upon which to erect the court house building and other public buildings for county purposes, was designated. This was left to the court of county commissioners, whose duty it was under the general statutes to erect such buildings, and the exercise of their powers in the location of such buildings was only limited to the territorial boundary of the town of Linden, as it existed at the time of the passage of the act of removal. The same general statutes which then existed, investing the court of county commissioners with the power, and imposing upon that court the duty, of erecting a new court house and jail, remain the law today, unaffected by any constitutional provision, in so far as the power and duty of building such new court house and jail is concerned, whenever by them deemed necessary.—§§ 1405-1409 of Code of 1896.

There is a limitation put by the Constitution upon the powers of the commissioners' court, in the matter of the levy of a special tax for such purposes (section 215 of the Constitution), and also, a limitation in the matter of the issuance of bonds.—§ 222 of the Constitution. But as shown by the bill and the denials of the sworn answer, in neither of these respects has there been any violation by the court of county commissioners of the constitutional provisions.

"As a general rule in all cases involving the location, erection, repairs, removal, or furnishing of county buildings, such as court houses, jails and public offices, the court of county commissioners exercise a discretion which can not be controlled by any judicial tribunal, in the absence of fraud, corruption or unfair dealing."—7 Am. & Eng. Ency. Law (2d ed.), 996, and authorities there cited. Under our statutes, there can be no doubt of the proposition, that the court of county commissioners has sole and exclusive power and authority, in the matter of determining the necessity for a new court house for the county and having the same erected, and that in these matters they act in, at least, a *quasi* legislative capacity, and their acts, when free from fraud,

corruption, or unfair dealing, cannot be controlled or questioned by any other court.—*Vide*, §§ 1405-1409, Code, 1896; *Hayes v. Ahlrich et al.*, 115 Ala. 239. See also the following cases construing the court's powers and discretion in matters of public roads, and in which the principles declared seem applicable here: *Commissioners v. Hearne*, 59 Ala. 37; *Hill v. Bridges*, 6 Port. 197; *Moore v. Hancock*, 11 Ala. 245; *Parnell v. Commissioners*, 34 Ala. 278; *Commissioners v. Bowic*, 34 Ala. 461; *Askew v. Hale*, 54 Ala. 638.

Coming to the question first stated above, as to the power of the court of county commissioners to remove the court house from the present *site* or lot in the town of Linden to another and different *site* or lot within the territorial limits of said town as they existed at the time of the permanent location of the court houses in the town of Linden by the act of February 8th, 1871, we think it may be asserted, that no one would question the power and authority of the court of commissioners, in the event of a change of the seat of government in a particular county, from one town, municipality, or district to another in such county, under the provisions of section 41 of the Constitution, to select the particular *site* or lot for the erection of the public buildings thereon, within the territorial limits of the town, municipality or district, to which the removal was made, and this without any submission of such selection to a vote of the people. Section 41 of the Constitution reads as follows: "No court house or county site shall be removed except by a majority vote of the qualified electors of said county voting at an election held for such purpose, and when an election has been once held no other election shall be held for such purpose until the expiration of four years," etc. The terms *court house site* and *county site*, in their ordinary use mean the same thing, and are taken and understood to signify the seat of government of the county, and in this sense cannot be restricted and confined to the particular lot, or the ground by measurement, upon which the necessary public buildings are erected. We said on the former appeal in this case, *Marengo County et al. v. Matkin et al.*, 134 Ala. 275, 32 So. Rep. 669: "It has been declared as a general princi-

[Matkin et al. v. Marengo County et al.]

ple that, 'when a city or town is selected as the county
seat, the boundaries of such city or town, as they then
exist, become the boundaries of the county seat,' " etc.
The principle is the same, whether it be the county seat
or *site*, or the court house *site*, although the latter be a
court house located in a town or city, other than the
*county seat*, as is often done for the convenience of the
people.

We judicially know that in a number of the counties
of this State, besides the court house at the county seat,
there are court houses for the holding of the circuit and
chancery courts located in other towns or cites within
the county. A knowledge of the existence of these con-
ditions is sufficient to account for and explain the par-
ticularity of the framers of the Constitution in the
language employed in section 41, that "no court house
or county site," etc. The construction contended for by
counsel for appellants, that "court house" *site* should be
held to mean the particular lot upon which the building
is erected, is too narrow and unsupported by sound rea-
son, and if adopted, would likely lead to greater public
detriment in possible cases, than mere inconvenience.

Our conclusion is, and we so decide, that it was, and
is, intended by section 41, that no court house shall be
removed from the town or city, where located at the
time of the adoption of the Constitution, except as pro-
vided in said section, and not, that a new court house
may not be erected within such town or city on a lot
other than that upon which the old is located, whenever
determined necessary by the court of county commis-
sioners, without first having submitted such question to
a vote of the people.

Nothing appears from the record to the contrary, but
that the orders of the court of commissioners relative to
the building of the new court house were properly made
at an adjourned term of the court on the 9th day of July
from the regular May term of said court. The fact that
the June term of the court, as prescribed by section 3978
of the Code, intervened between the regular May term,
and the adjourned term of July 9th, did not interrupt
the continuance of the regular May term to this later
date. The June term provided for in sections 3977,

3978, while in one sense, is a regular term, and so denominated by the statute, still is limited by the statute. to the transaction of business relating solely to taxation, and is in no sense a regular term off the court for the transaction of business generally. It would not for a moment be contended, if the orders in the present case had been made at such June term, that they would have been valid.

We find no error in the record, and the decree of the chancellor will be affirmed.